IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY DION LUDWIG,<br><br>Plaintiff,<br>v.<br><br>KILOLO KIJAKAZI,[1]<br>Acting Commissioner of<br>Social Security,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL NO.: 1:20-CV-01820<br><br>(Magistrate Judge Schwab) |

**MEMORANDUM OPINION**

## I. Introduction.

Jeffrey Dion Ludwig ("Ludwig") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *Doc 1* at 1. We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Because the

[1] Kiolo Kijakazi is now the Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Commissioner's decision is supported by substantial evidence, the court will affirm the Commissioner's decision.

**II. Background and Procedural History.**

We refer to the transcript provided by the Commissioner. *See docs. 15-1* to *15-16*.[2] On September 26, 2017, Ludwig filed an application for Social Security disability benefits, alleging disability beginning August 17, 2017. *Admin Tr.* at 33. His claim was denied on January 31, 2018. *Id.* On February 22, 2018, Ludwig filed a written request for a hearing, which was held on January 15, 2019. *Id.* Ludwig was represented by Subhan Farooqi, an attorney, and the hearing was held before Administrative Law Judge Jarrod Tranguch ("ALJ"). *Id.*

On May 21, 2019, the ALJ determined that Ludwig had not been disabled within the meaning of the Social Security Act from August 17, 2017 through the date of the decision. *Id*. at 44. And so, he denied him benefits. *Id*. Ludwig appealed the ALJ's decision to the Appeals Council, which denied his request for review on August 4, 2020. *Doc. 16* at 2. This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

[2] The facts of the case are well known to the parties and will not be repeated here. Instead, we will recite only those facts that bear on Ludwig' claims.

On October 5, 2020, Ludwig began this action by filing a complaint claiming that the Commissioner's decision is not supported by substantial evidence. *Doc*. *1* at 2. Ludwig requests that the court find that he is entitled to Social Security benefits or remand the case for a further hearing. *Id.* The Commissioner filed an answer to the complaint and a transcript of the proceedings that occurred before the Social Security Administration. *Docs*. *14-15*. The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc*. *13*. The parties then filed briefs, *see docs*. *16*, *17*, and this matter is ripe for decision.

## III. Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Ludwig is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

**B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.**

To receive benefits under Title XVI of the Social Security Act, a claimant generally must be "unable to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920. Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is '"that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20

C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, '"the

reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV. The ALJ's Decision Denying Ludwig's Claim.

On May 21, 2019, the ALJ denied Ludwig's claim for benefits. *Admin. Tr.* at 44. At step one of the sequential-evaluation process, the ALJ found that Ludwig had not engaged in substantial gainful activity since August 17, 2017, the alleged onset date. *Id*. at 35. At step two of the sequential-evaluation process, the ALJ found that Ludwig had the following severe impairment: hemolytic anemia. *Id.* at 36.

At step three of the sequential-evaluation process, the ALJ found that Ludwig did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 37. Specifically, the ALJ discussed Listing 7.05 and that "there are no medical findings that precisely meet or medically equal the criteria of 7.05 hemolytic anemias as described in the listing of Impairments, Appendix 1, Subpart P, Regulation No. 4." *Id*. at 38.

The ALJ determined that Ludwig has the RFC to perform light work[3] with some limitations. *Id*. The ALJ found that Ludwig is limited to only the occasional balancing, stooping, crouching, crawling, use of ramps and climbing of stairs. *Id.* The ALJ also determined that Ludwig would need to avoid climbing on ladders, ropes, or scaffolds. *Id.* Additionally, the ALJ found that Ludwig can tolerate occasional exposure to extreme cold and pulmonary irritants such as strong fumes, noxious odors, concentrated dusts or gasses, and work environments with poor ventilation. *Id.* The ALJ also stated that Ludwig must avoid hazards such as unprotected heights and dangerous moving machinery. *Id.* In making this RFC assessment, the ALJ considered Ludwig's symptoms that could be accepted as consistent with the record evidence, the medical opinions, and the prior administrative medical findings. *Id*.

At step four of the sequential-evaluation process, the ALJ found that Ludwig was not capable of performing past relevant work. *Id*. at 42. At step five of the

[3] *See* 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

sequential-evaluation process, considering Ludwig's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—mail sorter, courier, and assembler of small products—that exist in significant numbers in the national economy that Ludwig could perform. *Id* at 43-44. In sum, the ALJ concluded that Ludwig was not disabled from August 17, 2017, through the date of his decision on May 21, 2019. *Id*. at 44. Thus, the ALJ denied Ludwig benefits. *Id*.

**V. Discussion.**

Ludwig raises one issue on appeal. He argues that the ALJ's RFC determination is unsupported by substantial evidence because the ALJ failed to properly evaluate the opinion of treating medical source Anthony Le, D.O. ("Dr. Le"). *Doc. 16* at 6. The ALJ's assertion, according to Ludwig, that neither subjective reports, objective medical evidence, or clinical findings support Dr. Le's opinion results in a substitution of a medical opinion for a lay opinion. *Id.* at 10. Accordingly, Ludwig contends that the ALJ formulated the RFC without the support of a medical opinion. *Id.* The Commissioner claims that the ALJ's RFC determination comported with the new regulatory scheme controlling the handling of opinion evidence, which does not require him to adopt a medical opinion or prior administrative finding. *Doc. 18* at 18.

The Court finds that substantial evidence supports the ALJ's RFC determination. Because Ludwig's claim concerns the ALJ's handling of opinion evidence, we start with a brief overview of the regulations regarding opinion evidence. The regulations in this regard are different for claims filed before March 27, 2017, on the one hand, and for claims, like Ludwig's, filed on or after March 27, 2017, on the other hand. Specifically, the regulations applicable to claims filed on or after March 27, 2017, ("the new regulations") changed the way the Commissioner considers medical opinion evidence and eliminated the provision in the regulations applicable to claims filed before March 27, 2017, ("the old regulations") that granted special deference to opinions of treating physicians.

The new regulations have been described as a "paradigm shift" in the way medical opinions are evaluated. *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under the old regulations, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Id*. But under the new regulations, "[t]he range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Id*.

Under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). And if "a treating source's medical opinions on the issue(s) of the nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Commissioner "will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under the old regulations, where the Commissioner does not give a treating source's medical opinion controlling weight, he or she analyzes the opinion in accordance with a number of factors: the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors. *Id*. at §§ 404.1527(c)(2)–(c)(6), 416.927(c)(2)–(c)(6).

Under the new regulations, however, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. §§ 404.1520c(b),

416.920c(b). And the Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). As to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). And as to consistency, those regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors. *Id*. But if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

This Court and the Third Circuit have held that the ALJ does not need to base his or her RFC finding on a specific medical opinion; it is an administrative finding. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."); *Titterington v. Barnhart*, 174 F. App' x 6, 11 (3d Cir. 2006) (there is no current "legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC [residual functional capacity]"); *Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003); *Foux v. Saul*, 2021 U.S. Dist. LEXIS 60683 (M.D. Pa. Mar. 30, 2021) (Mariani, J.) ("Defendant is correct that the RFC assessment is the exclusive province of the ALJ and not the province of treating physicians or other medical providers. Defendant is also correct that an ALJ is not required to seek a separate expert medical opinion to carry out his duty

to assess a claimant's RFC.").

Here, the ALJ comported with the new regulatory framework and substantial evidence supports his RFC determination. As a threshold matter, the ALJ discussed at length the persuasiveness of the medical opinions in the record and discussed the consistency and supportability of each, as required by the regulations. *Admin. Tr.* at 41. Specifically, Ludwig claims the ALJ failed to properly evaluate Dr. Le's March 14, 2018 opinion because did not address the supportability factor and failed to articulate how he considered certain pieces of "probative evidence." *Doc. 16* at 11; *doc. 18* at 4.

The record reflects, and the ALJ confirms, that Dr. Le completed a physical assessment form dated March 14, 2018, in which he "opined that [Ludwig] is limited to sedentary exertion with sitting less than 1 hour in an 8-hour workday and standing and/or walking less than 1 hour in an 8-hour workday." *Admin. Tr.* at 41. Per Dr. Le, Ludwig is "likely to be absent from work more than four time[s] a month (Exhibit 8 F)." *Id.* The ALJ explained that he did not find Dr. Le's opinion persuasive "because it seems to be based largely on [Ludwig's] self-reported symptoms and limitations and is not supported by any objective medical evidence or clinical findings of record." *Id.* And per the ALJ, the examination findings in the record are benign and the medical evidence fails to support the "sitting, standing, walking, lifting/carrying limitations" opined by Dr. Le. *Id.* Finally, the

ALJ found that Dr. Le's opinion was devoid of "specific symptoms, signs or clinical findings to support his opinion." *Id.*

Contrary to Ludwig's assertions, we find that the ALJ considered the supportability factor because he determined that Dr. Le's opinion was largely based on Ludwig's self-reported limitations. *Id.* Further, the ALJ evaluated Dr. Le's opinion against the entire record and found it not to be supported by the medical evidence or clinical records. *Id.* As to the "probative evidence" Ludwig contends the ALJ should have considered, the record reflects that such records are treatment records, not medical opinions as defined in the applicable regulations, and the ALJ was not required to evaluate their persuasiveness. *See Swank v. Saul*, No. 2:19-cv-1484, 2021 WL 1143608, at *5 (W.D. Pa. Mar.25, 2021); *see also* 20 C.F.R. § 416.913(a)(2) (defining medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in" the ability to perform work-related functions). Thus, we find that the ALJ properly analyzed Ludwig's claim, and Dr. Le's opinion in particular, and his findings are supported by substantial evidence.

## VI. Conclusion.

For the foregoing reasons, the decision of the Commissioner will be affirmed, and final judgment will be entered in favor of the Commissioner and against Ludwig. An appropriate order follows.

***S/Susan E. Schwab***
Susan E. Schwab
United States Magistrate Judge